# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

PRESTON KENT LONG, )
ET AL., )
                                     )
        Plaintiffs, )
vs. ) NO. CIV-12-0957-HE
                                     )
HCA HEALTH SERVICES, INC., )
ET AL., )
                                     )
        Defendants. )

## ORDER

Plaintiffs filed this case against multiple defendants, arising out of the arrest of plaintiff Preston Kent Long on May 18, 2010. They asserted claims for violations of constitutional rights under § 1983 and various state law claims. The claims of plaintiff Simona Long and those asserted on behalf of S.L., a minor, have been dismissed either by stipulation of the parties or by order of the court. Similarly, the claims of Mr. Long have been dismissed against all defendants other than defendant Andrew Fulmer, leaving only his § 1983 claims against Officer Fulmer in his individual capacity. Officer Fulmer now seeks summary judgment based on qualified immunity [Doc. #73].[1] The motion is at issue.

### Background

The general circumstances out of which plaintiff's claims arose are undisputed. On

---

[1] *Fulmer first asserted qualified immunity in a motion to dismiss [Doc. #29], which the court concluded was premature and therefore denied [Doc. # 36]. The Tenth Circuit Court of Appeals affirmed that denial [Doc. #44].*

May 18, 2010, plaintiff's daughter had been admitted to the Emergency Room (ER) at OU Children's Hospital and was in critical condition. At some point during the evening, plaintiff went to the hospital cafeteria to get a soft drink and snacks. The main public access door to the cafeteria was closed at the time, but plaintiff entered through a side door. Once inside, he was told, both by a maintenance worker cleaning the area and later by the cafeteria manager, that the cafeteria was closed.[2] He nonetheless stayed and insisted on getting the items he wanted. A confrontation with the manager followed. According to plaintiff's testimony,[3] he sought to leave the area and return to where his daughter was. P. Dep. at 84. He fell on the slick floor, which was being mopped, three times. While plaintiff was on the floor, the manager of the cafeteria called the University of Oklahoma Police Department (OUPD) for assistance. Plaintiff's testimony is that the manager then sought to block him from leaving the area, was belligerent, and scared plaintiff. P. Dep. at 92-96. Plaintiff ran around the manager, reached the area just outside the cafeteria, and yelled "at the top of [his] lungs" for the police. P. Dep. at 97.

OUPD Officer William Allison, who was in his sixties and wearing a cast on his hand at the time, arrived at the cafeteria first. Officer Allison attempted to get plaintiff to calm

---

[2] Plaintiff's response purports to dispute whether he knew the cafeteria was closed "at the time of his entry" but does not dispute that he was told that both by the maintenance worker and twice by the manager after his entry.

[3] In a number of instances, plaintiff's response brief purports to assert facts or take a position inconsistent with the plaintiff's own deposition testimony describing the events. Plaintiff's deposition testimony is fully set out as Exhibit 1 to his response brief [Doc. #81-1] and is referenced here as "P. Dep. ___" with page references being to the page of the deposition.

down. Plaintiff indicates he tried to calm down, but could not, and acknowledges that he remained highly agitated throughout his exchange with the two police officers who first responded. P. Dep. at 101. Shortly after Allison arrived, defendant Fulmer, also an officer with the OUPD, reached the cafeteria. Upon arrival, Officer Fulmer observed plaintiff shouting at and poking Officer Allison with his finger.[4] Plaintiff's testimony is that he complied with all the officers' instructions other than to calm down, indicating his focus on getting back to his baby interfered with his ability to calm down. P. Dep. at 104. However, it is undisputed that when Officer Fulmer grabbed his left elbow, plaintiff pulled away and resisted.[5]

After plaintiff pulled away from Fulmer's grip, the officer moved to subdue the plaintiff. Plaintiff's testimony as to the encounter is as follows:

> And he put my left arm in some kind of a wrist hold, made the arm rigid where he had control of my body by having my wrist twisted. And then he ordered me on the ground, which I complied with. I got on the ground. Then he

---

[4]*Plaintiff purports to dispute this fact, asserting that the police report and affidavit later filed by Fulmer "specifically indicate that Officer Fulmer did not witness Mr. Long poking Officer Allison." [Doc. #81 at 13]. In fact, the report suggests no such thing, and specifically indicates it appeared plaintiff was doing so. [OUPD Report, at 10-11]. Apparently, plaintiff's position is that "appearing" to do something proves it didn't happen. Further, plaintiff's own testimony indicates: "I don't—I don't recall touching the officer. But I—in my state, I very well could have done that." P. Dep. at 106. He further indicated he didn't view the contact as "appropriate," but that it was "understandable" under the circumstances. P. Dep. at 107.*

[5]*Plaintiff characterizes his actions as a reflex, but does not dispute that he pulled away from the officer. P. Dep. at 219: "Q: Do you have any reason to deny that he grabbed your left elbow and that you pulled away? A: No." Further, plaintiff acknowledges that he was "probably fairly mobile" during the encounter. P. Dep. at 104. "I was upset, clearly. And I went — I kept — I kept saying look — you know, and the whole time we're doing this, I'm probably not standing still, because it's just not my nature. And I was, you know, maybe moving around." P. Dep. at 210.*

3

> proceeded to put his knee on my spinal column; Take my left arm, which is fully rigid; started leveraging my left shoulder; and separated my left shoulder as he yelled in my ear, "When a cop tells you to fucking do something, you better fucking do it."

P. Dep. at 108-09. Plaintiff testified Fulmer handcuffed him at that point and that the handcuffs were extremely painful because he was a "fairly big guy," was "not real flexible," and could not put his hands back together. P. Dep. at 124. Plaintiff indicates he is six feet tall and weighed approximately 320 pounds at the time of the incident. He described Officer Fulmer as a "little guy" who he estimated to be 5'6" in height and 165 pounds in weight. P. Dep. at 102. Due to plaintiff's complaints about his shoulder and other injuries, Fulmer later took plaintiff to the ER at Presbyterian Hospital for examination.

Plaintiff's arrest was on the basis of shoplifting and obstruction (i.e., obstructing an officer in the performance of his duties.)

## Discussion

On a motion for summary judgment, the court will grant the motion if the movant shows that there is no genuine issue at to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). The evidence is viewed in the light most favorable to the non-moving party and all factual disputes and reasonable inferences must be resolved in his favor. Estate of Booker v. Gomez, 745 F.3d 405, 411-12 (10th Cir. 2014). Where, as here, defendant asserts qualified immunity as a defense, plaintiff bears the initial burden of showing that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's

4

conduct." Id. at 411. The burden then shifts to the defendant to show that there are no material issues of fact that would defeat the claim of qualified immunity. Felders v. Malcolm, 755 F.3d 870, 877 (10th Cir. 2014). Applying these standards, the court concludes defendant Fulmer is entitled to summary judgment on the basis of qualified immunity.

Plaintiff's § 1983 claims appear to assert two violations of his rights, one for false arrest and one for use of excessive force in effecting that arrest.[6]

With respect to a claim for false arrest, an arrestee's constitutional rights are violated if the arresting officer acts "in the absence of probable cause that the person had committed a crime." Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). To establish false arrest, a plaintiff must prove that his arrest and detention were without probable cause. Kerns v. Bader, 663 F.3d 1173, 1187 (10th Cir. 2011). "Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Maher, 919 F.2d 1482, 1485-86 (10th Cir. 1990). Probable cause is "based on the totality of the circumstances" and "measured at the moment the arrest occurs." Cortez v. McCauley, 478 F.3d 1108, 1120-21 (10th Cir. 2007).

Here, the undisputed facts plainly show that the officers had probable cause to arrest

---

[6]*In connection with the motion to dismiss previously addressed, the parties, this court, and the Tenth Circuit analyzed the issues on the basis that only a claim for excessive force was involved. However, as plaintiff now appears to also assert a claim for false arrest, that is addressed here as well.*

5

the plaintiff. As to the shoplifting charge, it is undisputed that, at the time of the arrest, plaintiff was outside the cafeteria with both the food items he was seeking to purchase and the money for them.[7] Further, with respect to the obstruction charge, it is undisputed that plaintiff remained agitated throughout his encounter with Allison and Fulmer, that he poked Allison in the chest, that he sought to leave despite their directions to the contrary, and that he pulled away from Fulmer when Fulmer tried to restrain him. Those facts make out an ample basis for probable cause as to obstruction. Whether viewed through the prism of qualified immunity or otherwise, defendant Fulmer is entitled to summary judgment as to any false arrest claim.

The excessive force claim presents a somewhat closer question. As plaintiff's claim arises out of his arrest, the Fourth Amendment provides the applicable constitutional standard. Gomez, 745 F.3d at 419. The question as to such claims is "whether the officers' actions are objectively reasonable." Fisher v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009) (internal quotation omitted). In determining whether force is objectively reasonable, courts consider the following factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 396 (1989). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than

---

[7]*P. Dep. at 117: "Q. So you left the cafeteria with the pop, the Pop Tarts, and the cash? A. Yes."*

with the 20/20 vision of hindsight," and allow for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97 (internal quotations omitted).

Applying these standards, the court concludes plaintiff has not presented evidence sufficient to create a material issue of fact as to whether a constitutional violation occurred. The offenses in question were misdemeanor offenses, which arguably suggests a lesser level of force is warranted. However, where one of the offenses involves physical contact with, or physical resistance of, a police officer, the court views that as a more serious offense notwithstanding the misdemeanor classification of it.[8] Further, the undisputed facts establish that an officer could have reasonably viewed plaintiff as both a threat to the safety of the officers and likely to flee. Officer Fulmer confronted a highly agitated person who could not or would not calm down. The suspect was shouting at a fellow officer and poking him in the chest with his finger. The plaintiff continued to move around during the encounter, "totally focused on getting back to his child," leading the officers to reasonably understand that he was resisting their instructions that he remain in place. Upon Officer Fulmer's effort to restrain him by the elbow, plaintiff pulled away and resisted. In these circumstances, the use of force, including his forcible takedown, was warranted to subdue the defendant and effect the arrest.

---

[8]*See generally* <u>Morris v. Noe</u>, *672 F.3d 1185, 1195 (10th Cir. 2012).*

7

Plaintiff argues the particular force Officer Fulmer used was excessive, in that he leveraged plaintiff's arm to the point his shoulder separated and that he was trying to "show him who was boss," or words to that effect. The court concludes otherwise. The undisputed facts show that the officer was attempting to subdue a large, highly agitated man roughly twice his size. A significant amount of force is obviously necessary to accomplish that. Plaintiff acknowledges that his size and lack of flexibility made it difficult to put his hands together behind his back. An officer handcuffing a suspect in those circumstances will necessarily put more pressure on arms and joints than would be the case with a smaller or more flexible person. Even if Fulmer's objective was, in part, to "show plaintiff who was boss," it simply doesn't matter if the force applied was otherwise reasonable. In a Fourth Amendment context, the question is whether the force employed was objectively reasonable, without regard to the officer's intent or motivation. Graham, 490 U.S. at 397.

In his response brief [Doc. #81 at 33], plaintiff asserts that Officer Fulmer testified he deliberately used as much force as he possibly could. In fact, the officer testified to no such thing and plaintiff's characterization is a misleading description of the testimony.[9]

Both in his response brief and in his deposition testimony, plaintiff repeatedly emphasized that his agitation and conduct were due to his concern with the condition of his critically ill child and his desire to return to her. Those circumstances may very well make

---

[9]*Fulmer Dep. [Doc. #81-3] at 39. The line of questioning concludes with this exchange: "Q. Well, let's clarify. So when you went to restrain Mr. Long, did you use as much force as possible or as much force as you believed necessary? A. As much force as I believed necessary."*

plaintiff's conduct understandable. But the question here is not whether the plaintiff's conduct was understandable or reasonable under the circumstances. Rather, the question is whether <u>the officer's</u> conduct was objectively reasonable in light of the circumstances <u>he</u> confronted and what <u>he</u> knew at the time.

Applying the <u>Graham</u> factors to the undisputed facts, the court concludes plaintiff has not presented evidence sufficient to create a justiciable question as to whether Officer Fulmer used excessive force. As the necessary showing has not been made as to the existence of a constitutional violation, it is unnecessary to consider whether, with the necessary level of specificity, the pertinent constitutional right was clearly established.[10]

Defendant's motion for summary judgment [Doc. #73] is **GRANTED.**

**IT IS SO ORDERED**.

Dated this 28th day of January, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[10]See <u>Eaton v. Meneley</u>, 379 F.3d 949, 954 (10th Cir. 2004) ("*if a plaintiff fails to demonstrate a defendant's conduct violated the law, the court need not determine whether the law was clearly established*").